JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Kimberly Lash
3214 Kilburn Road
Philadelphia, PA  19114

**DEFENDANTS**
Reliance Standard Life Insurance Company, Matrix Absence Management, Inc. and Temple University Health System, Inc.

**(b)** County of Residence of First Listed Plaintiff      Philadelphia
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant      Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Bruce L. Neff, Esquire, Neff and Assocaites, 15th St. & JFK Blvd.
Two Penn Center Plaza, Suite 1212, Philadelphia, PA  19102

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☒ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1  Original
Proceeding
☐ 2  Removed from
State Court
☐ 3  Remanded from
Appellate Court
☐ 4  Reinstated or
Reopened
☐ 5  Transferred from
Another District
*(specify)*
☐ 6  Multidistrict
Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
29 U.S.C. §1132(a)(a)(B), §1132(a)(3), §1132(c), §1022, 28 U.S.C. §1367 and §2201
Brief description of cause:
ERISA & Non-ERISA cause of Action.  Defendants' failure to pay disability payments.

**VII. REQUESTED IN
COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

**VIII. RELATED CASE(S)
IF ANY**
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE   1/14/16
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Kimberly Lash                                    :          CIVIL ACTION
        vs.                                :
Reliance Standard Life Insurance    :
Company, Matrix Absence Management,  :
Inc. and Temple University Health    :          NO.
System, Inc.                        :

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                        ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                           ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                       ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.               (xx)

| | | |
|---|---|---|
| 1/14/16 | Bruce L. Neff, Esquire | |
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff <br> Kimberly Lash |
| 215-564-3331 | 215-564-6952 | bneff@neffandassociates.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: Kimberly Lash, 3214 Kilburn Road, Philadelphia, PA  19114

Address of Defendant: Reliance Standard Life Insurance Company, Matrix Absence Management, Inc. and Temple University Health System, Inc.

Place of Accident, Incident or Transaction: _____
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))     Yes☐  No☒

Does this case involve multidistrict litigation possibilities?     Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____  Judge _____  Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
(Please specify) _____ "ERISA" _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
(Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, __Bruce L. Neff, Esquire__, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒☒ Relief other than monetary damages is sought.

DATE: 1/14/16 _____     _____     02415
                                  Attorney-at-Law        Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/14/16 _____     _____     02415
                                  Attorney-at-Law        Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Kimberly Lash                                          :            CIVIL ACTION
3214 Kilburn Road
Philadelphia, PA  19114                       :
    vs.
Reliance Standard Life Insurance Company  :
2001 Market Street, Suite 1500
Philadelphia, PA  19103                       :
    and
Matrix Absence Management, Inc.            :
c/o CT Corporation System
116 Pine Street, Suite 320                      :
Harrisburg, PA  17101
    and                                          :            No.
Temple University Health System, Inc.
3509 N. Broad Street, 9th Floor               :
Philadelphia, PA  19140

### CIVIL ACTION COMPLAINT

1.   Plaintiff, Kimberly Lash is an adult individual residing at 3214 Kilburn Road,

Philadelphia, PA 19114.

2.   Defendant, Reliance Standard Life Insurance Company ("Reliance") is a corporation

organized under the laws of Illinois, which at all material times issued disability insurance

policies in Pennsylvania.  Its headquarters is at 2001 Market Street, Suite 1500, Philadelphia, PA

19103.

3.   Defendant, Reliance Standard Life Insurance Company, was the insurer of benefits and

designated claims administrator of the Group Long-Term Disability Insurance Plan for Temple

University Health System, Inc., (the "Plan").

4.   Defendant, Matrix Absence Management, Inc. ("Matrix"), is a corporation regularly

conducting business in the Commonwealth of Pennsylvania, County of Philadelphia with a

registered service address of CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, PA

17101.

5.    Defendant, Matrix performed claims administration duties in connection with the Plan during relevant times hereto.

6.    Matrix acted as claims administrator pursuant to an administrative services agreement with Reliance.

7.    Defendant, Temple University Health System, Inc., is a corporation licensed to do business in the Commonwealth of Pennsylvania, City of Philadelphia, with a registered address of 3509 N. Broad Street, 9th Floor, Philadelphia, PA  19140.

## STATEMENT OF JURISDICTION

8.    Plaintiff's claims arise from a dispute involving the Long-Term Disability Plan provided by Plaintiff's employer and benefits claimed under that Plan.

9.    The Reliance Standard Life Insurance Company issued a policy of insurance to fund the Long-Term Disability benefits provided under Temple University Health Systems, Inc.'s Long-Term Disability Plan.

10.  At all material times Plaintiff was employed by Temple University Health System, Inc. and eligible to claim Long-Term Disability benefits insured by Defendant.

11.  In addition to Plaintiff's claim for benefits under the policy issued by Reliance Standard, Plaintiff seeks a penalty pursuant to 29 U.S.C. §1132(a) for Defendant's refusal to supply requested information that it was required to furnish under Title 29.

12.  This Court has subject matter jurisdiction pursuant to the Employee Retirement Income Security Act "ERISA", 29 U.S.C. §1132(a)(1)(B), §1132(a)(3), §1132(c), §1022 and pursuant to 28 U.S.C. §1367 and §2201.

13.  This Court has personal jurisdiction over Defendants by virtue of their citizenship and/or

registration to conduct business in Pennsylvania and their regular and continuous activities

within the Commonwealth of Pennsylvania.

## STATEMENT OF FACTS OF THE CASE

14.   At all material times Plaintiff was insured for long-term disability benefits under Policy

Number:  LTD 669885 issued by Defendant, Reliance Standard Life Insurance Company.  See

Policy, attached hereto as Exhibit "1" and Summary Plan Description, attached as Exhibit "2".

15.   Under the terms of the policy, the monthly benefit is an amount equal to 60% of Covered

Monthly Earnings, payable in accordance with the section entitled Benefit Amount.

16.   Under the Insuring Clause provision of Reliance Standard's policy, the following is

required:

> We will pay a Monthly Benefit, if an Insured:
> (1)  is Totally Disabled as  the result of a Sickness or Injury
>      covered by this Policy;
> (2)  is under the regular care of a Physician;
> (3)  has completed the Elimination Period; and
> (4)  Submits Satisfactory proof of Total Disability to us.

17.   Under the terms of the policy "Totally Disabled" and "Total Disability" mean, that as a

result of an injury or Sickness:

> (1)  during the Elimination Period and for the first 24 months for
>      which a Monthly Benefit is payable, an insured cannot
>      perform the material duties of his/her Regular Occupation;
>
> (2)  after a Monthly Benefit has been paid for 24 months, an
>      Insured cannot perform the material duties of Any Occupation.
>      We consider the Insured Totally Disabled if due to an injury or
>      Sickness he or she is capable of only performing the material
>      duties on a part-time basis or part of the material duties on a
>      Full-time basis.

18.   Under the terms of the policy "Any Occupation" means an occupation normally

performed in the national economy for which an insured is reasonably suited based upon his/her

education, training or experience.

19. Under the terms of the policy, Written Proof Of Total Disability is required, as follows:

> For any Total Disability covered by this Policy, written proof must
> be sent to us within ninety (90) days after the Total disability
> occurs.  If written proof is not given in that time, the claim will not
> be invalidated nor reduced if it is shown that written proof was
> given as soon as was reasonably possible.  In any event, proof must
> be given within one (1) year after the Total Disability occurs,
> unless the Claimant is legally incapable of doing so.

20. Under the terms of the Plan, Reliance Standard Life Insurance Company was appointed as the claims review fiduciary with respect to the insurance policy and the Plan.  The claims review fiduciary has the discretionary authority to interpret the insurance policy and to determine eligibility for benefits.

21. Reliance did not exercise its authority to determine claims and interpret policy provisions; instead, Reliance retained Matrix to act as a Third-Party Administrator.

22. Matrix did not have discretion to decide claims or interpret policy provisions under the terms of the Plan.

23. As a fiduciary, Reliance has an obligation to provide relevant information in accordance with 29 U.S.C. §1132(c) and 29 CFR 2560.503-1.

24. As set forth below, Reliance failed to provide relevant information.

25. Under the terms of the Medical Examination and Autopsy provision of Reliance Standard's policy, Reliance has the right to have a Claimant interviewed and/or examined.  This right may be used as often as it is reasonably required **while a claim is pending**.

26. As set forth below, Plaintiff was not requested to undergo an exam until after her claim was denied.

27. Under the Benefit Amount provision of Reliance Standard's policy, the following is

required:

> To figure the benefit amount payable;
> (1) multiply an insured's Covered Monthly Earnings by the
>      percentage(s), as shown on the Schedule of Benefits page;
> (2) take the lesser of the amount;
>     (a) of step (1) above; or
>     (b) the Maximum Monthly Benefit, as shown on the
>         Schedule of Benefits page; and
> (3) subtract Other Income Benefits, as shown below, from step
>     above.

> •         •         •

> (7) disability or Retirement Benefits under the United States
>     Security Act.

28. The Reliance Standard Policy contains a provision entitling the Defendant to offset

benefits for Social Security Disability Benefits received by Plaintiff.

29. The Summary Plan Description developed by Reliance and purportedly provided to

beneficiaries did not contain an offset provision for SSD referenced in the preceding paragraph,

and was not otherwise sufficiently accurate and comprehensive to apprise Plaintiff of her rights

and obligations under the Plan.  See Exhibit "2".

30. Plaintiff had a history of back pain requiring treatment in January 2012.  At that time, an

MRI showed a herniated disc at L4-5 with protrusion and additional degenerative conditions.

31. Plaintiff fell while still in treatment for the L4-5 herniated disc increasing her pain and

leading to another MRI in May 2012.

32. The second MRI revealed that Plaintiff had a lower thoracic spine intramedullary tumor.

The tumor, located within the spinal cord, was surgically resected on May 24, 2012, in a

procedure that required open exploratory surgery of her back and spinal cord, and laminectomies

at multiple levels.

33. Plaintiff initially had some sensation in her legs and back post surgery; however, she

subsequently went completely numb and totally paralyzed in her lower extremities.

34. After an extended hospital stay Plaintiff was admitted to Magee Rehab on May 21, 2012, where she participated in daily therapy and received various medications for paraplegia, pain, and urinary/bowel incontinence.

35. Plaintiff received steroids for her paraplegia; Nortriptyline, Lyrica, Neurontin and Cymbalta for her neuropathic pain; and for her somatic pain, Plaintiff received Dilaudid, Oxycontin, Tramadol and Motrin.

36. Upon discharge from her inpatient care at Magee, Plaintiff required a wheel chair, rolling walker, and shower chair. Among other medications Plaintiff continued to take Tramadol for somatic pain.

37. At the time of disability, Plaintiff worked as a payroll supervisor for Temple University Health System, Inc.

38. Plaintiff's job required work at a sedentary level.

39. At no time post-surgery did any Defendant determine that Plaintiff could perform the material duties of her occupation.

40. By letter dated December 11, 2012, Plaintiff was informed by Matrix that her claim for long-term disability benefits had been approved. See letter dated December 11, 2012, attached hereto as Exhibit "3".

41. Ms. Lash was informed at that time that in order to be eligible for benefits beyond 24 months she had to be disabled from performing the material duties of any occupation beginning August 3, 2014.

42. Plaintiff was instructed that "an investigation will begin prior to this date [August 3, 2014] in order to gather the necessary information to determine your continued eligibility for

LTD Benefits. For a more detailed description of this or any other policy provisions, please refer to our LTD certification of group insurance". Defendant did not provide the insurance certificate at this time.

43. By letter dated March 22, 2013, the advocate to which Defendant referred Plaintiff for purposes of applying for Social Security Disability informed Matrix's claims examiner that it had filed a request for a hearing because the initial SSD claim was denied.

44. Defendant was informed that the advocate would keep Defendant updated regarding the status of Plaintiff's Social Security claim and was provided with the advocate's contact information.

45. On or about March 23, 2013, Matrix Informed Plaintiff that it had contacted Dr. Abbott, Magee Rehabilitation Hospital, and Plaintiff's orthopedic surgeon and family doctor in order to obtain medical records from September 17, 2012 to March 22, 2013.

46. Plaintiff was informed by the aforementioned correspondence that the information was requested in order "to determination (sic) if you continue to meet the provisions of your long-term disability (LTD) policy.

47. Plaintiff was informed by letter dated May 1, 2013, that Matrix had again requested updated medical records of the 4 providers contacted in March 2013, as part of its review of Plaintiff's ongoing disability benefits.

48. By letter dated May 2, 2013, Plaintiff was informed that Matrix had requested medical records from five additional providers, Dr. Jallo, Dr. Glass, AquaHab, Dr. Wang, and Brian Bayzick, D.C.

49. By letter dated September 12, 2013, Plaintiff was informed that Matrix had requested updated medical records from the aforementioned nine providers.

50. By letters dated October 2013, November 2013, February 2014, and March 2014, Plaintiff was informed by Matrix that it was updating her records.

51. At no time up to April 2014, did Defendant inform Plaintiff that it was unable to obtain records from her providers.

52. On April 10, 2014, Matrix's Nurse Case Manager, Heidi Sanders performed a review of Plaintiff's claim.

53. Nurse Sanders noted that the information received included the records of Plaintiff's surgeon, chiropractor, neurology and neurosurgery, dermatology and family practice physicians. The records spanned through her March 10, 2014, office visit with Plaintiff's chiropractor.

54. At the time of Nurse Sanders' review, Plaintiff was suffering from low back pain, hip pain and bilateral leg paresthesias related to her tumor, and spinal surgery as well as multiple degenerative changes with multiple disc herniations.

55. Nurse Sanders noted that a 2013 thoracic MRI concluded that there was a bone marrow edema and cystic mass in Plaintiff's thoracic spine. The MRI documented a new mass which Defendant never accounted for in any of its claims investigations or analysis.

56. Nurse Sanders noted that Plaintiff had regained some bladder sensation but needed to void on a regular scheduled basis to prevent urinary incontinence.

57. Nurse Sanders further noted that Plaintiff reported to her spine surgeon, Dr. Abbott, that she was experiencing constant pain and neuropathy in her lower extremities, dizziness and memory issues as of April 2014.

58. Nurse Sanders' assessment was that the medical records did not reflect a significant change in Plaintiff's condition since the previous Nurse Case Management Review finding Plaintiff disabled from her sedentary occupation and that it was unlikely that Plaintiff would be

able to return to work of any type.

59. Nurse Sanders suggested an updated medical record review in early August of 2014.

60. By letter dated May 9, 2014, Plaintiff was reminded by Matrix that the any occupation period of long-term disability benefits was approaching as of August 3, 2014.

61. Plaintiff was requested by the May 2014 correspondence to complete an Activities of Daily Living Questionnaire and Authorizations so that the adjuster could obtain medical information to investigate Plaintiff's disability.

62. On or around June 6, 2014, Defendant requested that Dr. Abbott provide medical records and complete a Physicians Questionnaire. The same request was made of Magee Rehabilitation Hospital at that time. None of the other providers were contacted.

63. A medical review was performed in or around August 2014 by Nurse Catherine Ricci.

64. Nurse Ricci apparently copied the medical records review by Nurse Sanders in April 2014 and added a description of subsequent treatment records.

65. Ricci's August review included updated records to June 2, 2014. Dr. Abbott had completed an ADL form at that time noting sleep impairment, use of shower chair, unbearable pain of back, legs, and problems with balance.

66. Nurse Ricci noted that it was unclear at that point whether Plaintiff had consistent work function even at a potential maximum of sedentary level in a position that included the ability to stand and stretch.

67. By notice dated August 24, 2014, Plaintiff was informed that the Social Security Disability Administration had determined that she was totally disabled as of January 17, 2012, and awarded benefits retroactive to August 2012.

68. By letter dated October 21, 2014, Lash was informed that Defendant was recalculating

her benefits to take into account her entitlement to Social Security Benefits.  In addition, Defendant stated it had overpaid Plaintiff's claim from August 3, 2012 through September 3, 2014, in the amount of $37,801.40 and demanded  payment in that amount.

69.  Defendant stated that "the group policy requires that we withhold any future benefits payable to you until we receive the overpayment balance."  Defendant further informed that Plaintiff's benefits would resume upon her payment of $37,801.40.

70.  Defendant did not request that Plaintiff complete a consent form for release of information from the Social Security Department until November 19, 2014.  Plaintiff promptly completed and returned the authorization.

71.  Nurse Ricci documented another review on November 13, 2014.

72.  In addition to the information documented in her prior review, Nurse Ricci noted that Dr. Abbott found at the end of therapy in August 2014, that Plaintiff had dysesthesia and lower extremity weakness that would probably persist and that "she is going to have to accommodate."

73.  Nurse Ricci ignored or misrepresented Dr. Abbott's comments in the August 26, 2014, office note. Dr. Abbott noted, regarding the course of therapy in which she had engaged through the Summer, that "Unfortunately, while this had improved her strength it has not had an impact on her endurance with regards to being able to sit for extended periods of time.  The dysesthesia continues to be quite intrusive and precludes her ability to focus."  He further stated his opinion that the dysesthesia "is not something that she will be able to rehabilitate and overcome."

74.  Nurse Ricci also erroneously documented an alleged finding by Plaintiff's physical medicine specialist, Dr. Kupfer, that Plaintiff had physical capacity according to Ricci's note at level of "sedentary exertion with upper extremity, bilateral push pull; noting chronic pain and weakness of lower limbs."

75. In fact, Dr. Kupfer's findings were that Plaintiff had the lowest work exertion level which he could mark on the form provided by Matrix. The form requested that he indicate how much sitting Plaintiff could perform "on a regular basis in an 8-hour work day" to which Kupfer indicated between 67% and 100%. Dr. Kupfer did not indicate that Plaintiff had full-time sedentary work capacity.

76. Kupfer did not indicate that Plaintiff could continuously sit 100% of an 8-hour work day.

77. In addition, and in direct contradiction to the comment in Ricci's note, Kupfer marked "not at all" for pushing and pulling.

78. Defendant requested medical records and a Questionnaire from AquaHab by letter dated November 22, 2014.

79. By letter dated November 24, 2014, Defendant's long-term disability claims representative, Garry Smith, forwarded a letter duplicating the letter forwarded by its claims representative, Trent Small on October 21, 2014, claiming that benefits had been overpaid.

80. Defendant first requested that the Social Security Administration provide its records concerning Plaintiff's disability by letter dated December 1, 2014. Defendant's request for information was sent to the Social Security Administration Office of Central Operations in Baltimore, Maryland.

81. The instructions provided by the Social Security Administration, Form SSA-3288, Request For Information, clearly state that the completed consent for release of information form is to be sent to the recipient's local Social Security Administration Office. Defendant received no information in response to this request.

82. At or about this same time in December 2014, Plaintiff received payment for back benefits from SSA and refunded to Reliance the overpaid benefits in an amount exceeding

$37,000.

83. Contrary to Defendant's prior representation it did not resume payment to Plaintiff of her benefits upon Plaintiffs reimbursement of the overpayment. Plaintiff received a payment covering the period from September 3, 2014 through March 3, 2015 in March 2015.

84. By letter dated December 19, 2014, Defendant's claims representative again requested information from the Social Security Administration concerning Plaintiff's claim sending it to the office of Central Operations in Baltimore. Defendant informed Plaintiff at the time of this request that it was requesting information from the Social Security Office. Defendant received no response nor information to this request.

85. By letter dated January 14, 2015, Defendant's claims representative again requested information from the Social Security Administration concerning Plaintiff's claim sending it to the office of Central Operations in Baltimore. Again, Defendant informed Plaintiff that it was requesting information from the Social Security Office. Defendant received no information in response to this request.

86. By letter dated February 6, 2015, Defendant informed Plaintiff that it was denying her claim for long-term disability. See letter dated February 6, 2015, attached as Exhibit "4".

87. Defendant's claim notes reference three items of medical evidence created around the time that the any occupation provision came into effect. First, Defendant cited an office note of June 6, 2014, wherein the author stated support of Plaintiff's desire to return to work and documented advice for Plaintiff to continue physical training. The second medical citation is to the August 10, 2014, physical capacities questionnaire completed by Magee Rehabilitation Hospital about which Defendant erroneously claims "the information that the medical professional completed supports sedentary work capability." And finally, Defendant cites Dr.

Abbott's similarly mischaracterized note from Plaintiff's August 26, 2014, office visit.

88. Regarding the August visit with Dr. Abbott, Defendant misrepresents that Plaintiff was "now no longer attending" physical therapy. The note does not suggest or otherwise account for the fact that Plaintiff had completed the prescribed course of physical therapy with little to no improvement. Instead, Defendant misrepresents in its denial letter that physical therapy "did not appear to have an effect on your ability to sit."

89. Defendant notes that a repeat MRI scan was performed and "does not show such a distortion of the cord nor do the symptoms fit the type of pattern."

90. Defendant did not document any analysis regarding the significance of any of the three items of medical records that it summarized in its notes.

91. Defendant did not indicate in its denial the way in which the cited medical evidence supported its decision.

92. Defendant did not provide any hint as to the information that Plaintiff could provide to assist Defendant in resolving its concerns relevant to the medical evidence.

93. Defendant concluded its denial stating that Plaintiff had the transferable skills and physical capacity to work at occupations "performed at a sedentary level of exertion: information clerk; rehabilitation clerk; cashier 1; customer-complaint clerk; and accounting clerk."

94. All of the occupations identified by Defendant's residual employability analysis required up to 1 year of vocational preparation. The policy definition of disability does not contemplate the need for retraining.

95. All of the occupations identified by Defendant's residual employability analysis required lifting, carrying, pushing and pulling 10 pounds occasional.

96. There is no evidence that Plaintiff has or had that lifting, carrying, pushing or pulling capacity.

97. None of the occupations identified in Defendant's residual employability analysis allowed for unrestricted ability to stand and move around for purposes of stretching as needed.

98. All of the occupations identified in Defendant's residual employability analysis present work situations wherein the ability to obtain precise set limits, tolerances and standards is required or there is a requirement of being able to have certain cognitive aptitude including learning, verbal, and numerical aptitudes that were called into question by Plaintiff's treating physicians but Defendant never considered or investigated those cognitive limitations. The disability Plan required an analysis of whether the alternative occupations were economically gainful relative to Plaintiff's own occupation, Defendant made no such analysis.

99. Defendant informed Plaintiff that it was not obligated to follow the decision of Social Security Administration. However, Defendant did not inform that it had never obtained any information from the Social Security Administration.

100. On February 22, 2015, Plaintiff informed Defendant that she was Appealing its decision. Plaintiff requested copies of all documents relative to her claim.

101. By letter dated March 10, 2015, Defendant confirmed receipt of Plaintiff's request for review of the claim denial and informing that "to the extent that additional information is needed, Reliance Standard Life will toll the relevant time frames for reaching an Appeal determination from the time of our request for additional information until such time as we receive the requested information." Defendant also requested that Plaintiff complete an authorization for Defendant's "quality review unit to obtain updated medical information if it is needed during the review of your Appeal."

102. Despite knowing that Plaintiff was suffering from cognitive limitations, Defendant did not explicitly describe Plaintiff's rights and responsibilities in the appeals process.

103. By letter dated March 13, 2015, Defendant informed that it had "received and reviewed the medical records with a staff medical specialist.  In this regard, we had determined that we will require that you undergo an Independent Medical Examination (IME), prior to the conclusion of our review."

104. As of March 13, 2015, Defendant had not obtained any information, documents or records in addition to that which it had in its possession as of the date that it made the decision to deny Plaintiff's any occupation disability claim, February 6, 2015.

105. There was no new evidence or review leading to the IME request.

106. The IME was intended to provide a basis for the previous denial of benefits which was not supported by the records in Reliance's possession.

107. Defendant requested the IME in response to Plaintiff's appeal.

108. Defendant claimed that upon its receipt and review of the IME report it "will update you or inform should we determine that additional information would be required as part of this review."

109. Defendant never followed up regarding additional information after the IME.

110. On or about March 13, 2015, Defendant scheduled Plaintiff for an exam with Dr. Daniel Rosenberg for March 31, 2015.

111. The March 13, 2015 letter, like the March 10, 2015 letter, did not present information in a manner calculated to assist a person such as Plaintiff suffering from cognitive limitations.

112. Finally, the March 13, 2015, letter claimed that its request for an IME would toll the statutory time frames for reaching an appeal decision, from the time of its request until its receipt

of the physician's report.

113. There are no ERISA rules, regulations or guidelines that provide for tolling of deadlines for completion of an Appeal review upon request of an IME.

114. By letter dated May 22, 2015, Defendant informed that it was upholding its claims decision. See letter dated May 22, 2015, attached hereto as Exhibit "5".

115. In its second denial letter, Defendant's representative summarized some of Plaintiff's medical history and restated its position that the medical evidence no longer supported Plaintiff's disability.

116. Defendant reiterated its aforementioned misrepresentations of Dr. Abbott's and Dr. Kupfer's records and physical capabilities questionnaire responses.

117. Defendant continued its second denial "you appealed and in response to your appeal, RSL then arranged for you to undergo an Independent Medical Examination".

118. The medical examiner, Dr. Rosenberg, stated that Plaintiff had the ability, in an 8 hour work day, to sit between 34% to 66% of the time. Dr. Rosenberg concluded that if Plaintiff was able to stand and stretch "as needed", she had sedentary work capacity.

119. At no time did Dr. Rosenberg quantify the extent to which Plaintiff needed to stand, stretch, or move about, or indicate with any degree of certainty Plaintiff's ability to sit beyond his reference to a 34% to 66% range.

120. On March 2, 2015, a representative of Plaintiff's employer contacted Defendant to inquire into why Defendant had denied Plaintiff's claim for any occupation total disability. Defendant related that "we were able to find alt[ernative] sedentary occs based off the claimant's skills, education, and employment history." The employer's representative, Richard West stated the Plan required that any alternative employment provide earnings of at least 60% of the prior

earning capacity.  The Defendant's representative instructed that earnings amount provision was part of an earlier policy but not the Reliance Policy and suggested that Mr. West call the insurance agent.

121. Plaintiff was never informed of the purported change in the Plan eliminating the earnings amount provision.

122. Defendant's representative further informed that "in good faith" it would extend Plaintiff's benefits to the current date because of the delay in processing the claim which was blamed on Social Security Administrations taking so long to process Defendant's request for its file.  Contrary to its representation to West, Defendant processed the claim without ever having received the SSA file.

123. The same "communication" log was used by the first level claims team, and Defendant's  "Appeal specialist" Melissa C. Andre, Esquire, who upheld the Appeal on May 22, 2015.  All information and analysis associated with the first claim denial was utilized by the "Appeals Specialist".

124. On September 22, 2015, Plaintiff's counsel forwarded a letter to Ms. Andre, enclosing a letter from The Children's Hospital and two MRI reports showing re-growth of the spinal tumor which had previously been surgically removed.  See letter dated September 22, 2015, attached hereto as Exhibit "6".

125. On October 22, 2015, Plaintiff's counsel forwarded a letter to Ms. McGill, enclosing a copy the Functional Capacity Evaluation which was performed on Plaintiff on June 25, 2015. The report demonstrated that Ms. Lash did not have the physical capacity to perform a fulltime job. See letter dated October 22, 2015, attached hereto as Exhibit "7".

126. Defendant refused to consider the evidence submitted by Plaintiff's counsel, relying on

procedure grounds concerning the timing of the submission.

127. Defendant refused to consider the aforementioned, purportedly late evidence, despite the fact that its decision was itself untimely and based in part on evidence that was not developed in accordance with Plan and ERISA procedures.  Furthermore, Defendant knew that Plaintiff was undergoing evaluations to support her claim but Defendant decided it was upholding its decision to terminate benefits to avoid having to consider that evidence.  As a result, the decision to exclude the information supplied by Plaintiff's attorney was arbitrary and capricious and not intended to address Plaintiff's disability.

## COUNT ONE
### Claim for Benefits
### Plaintiff vs. Defendants, Reliance Standard Life
### Insurance Company and Matrix Absence Management, Inc.

128. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1- 127 aforesaid by reference as though fully set forth at length.

129. Defendant Reliance failed to exercise the discretion granted to it under the terms of the Plan.  Matrix did not have discretion to decide benefits or interpret policy terms; accordingly, this Court has *de novo* review.

130. Plaintiff is disabled under the terms of the group long-term disability insurance plan.

131. Plaintiff is entitled to benefits under the group long-term disability plan.

132. Plaintiff is entitled to back benefits and reinstitution of benefits.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of $150,000.00 together with interest, reasonable attorney's fees and costs, and any other relief this Court deems just.

## ALTERNATIVE COUNT TWO
### Plaintiff vs. Defendants, Reliance Standard Life
### Insurance Company and Matrix Absence Management, Inc.

133. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1-132 aforesaid by reference as though fully set forth at length.

134. In the event this Court finds that Matrix and/or Reliance was entitled to or did exercise discretion under the terms of the Plan in denying Plaintiff's benefit claim that decision was an abuse of discretion by virtue of Defendant:

    a. Failing to interpret the meaning of "part-time basis";

    b. Failing to consider any earnings component of whether Plaintiff was reasonably suited upon her education, training or experience for the alternative occupations;

    c. Failing to exercise its discretionary authority to decide claims and interpret policy provisions;

    d. Failing to provide relevant information under the policy;

    e. Requesting that Plaintiff undergo a physical examination after her claim was already denied with no new information or analysis;

    f. Utilizing the medical examination when such procedure was not described or provided for in the Summary Plan Description;

    g. Failing to consider the new tumor growth evidenced in the 2013 MRI;

    h. Failing to consider that Plaintiff suffered from somatic pain;

    i. Relying on the medical examiner when he failed to consider that Plaintiff was suffering from somatic pain;

    j. Failing to consider the affects of the pain and medication that Plaintiff was utilizing for that pain;

    k. Failing to inform Plaintiff to the extent that it was having difficulty obtaining documents from her providers;

    l. Failing to consider Plaintiff's cognitive deficits;

    m. Failing to consider Plaintiff's need for a regulated schedule in order to prevent

incontinence;

n.  Failing to contact all of Plaintiff's medical providers for records and a physicians questionnaire updating documents;

o.  Failing to obtain consent for release of information from the Social Security department upon learning Plaintiff obtained Social Security Disability benefits;

p.  Failing to obtain records from Social Security Department in a prompt fashion upon obtaining consent for release of information;

q.  Failing to take into consideration the determination of the Social Security Department that Plaintiff totally disabled;

r.  Making its decision without having obtained records of the Social Security Administration;

s.  Making its decision without Social Security Administration records while informing Plaintiff that it was obtaining the Social Security records;

t.  Misrepresenting to Plaintiff the contents of her medical records;

u.  Interpretating the contents of Plaintiff's medical records in a biased manner by disregarding information that benefited Plaintiff's claim giving undue weight to information that supported a denial of disability;

v.  Finding that Plaintiff could perform activities on a regular basis in a 8 hour work day when no medical provider or examiner was of the opinion that Plaintiff could work an 8 hour workday;

w.  Considering occupations that required training as occupations within Plaintiff's work capacity in its residual employability analysis;

x.  Considering occupations that required physical and mental capacity that Plaintiff did not have as potential occupations in its residual employability analysis;

y.  Failing to perform an independent analysis on review of Plaintiff's request for consideration;

z.  Misrepresenting that ERISA rules, regulations or guidelines provided for tolling deadlines to complete an IME;

aa. Deciding to reinstate benefits on no factual basis then withdrawing benefits;

135. Plaintiff is disabled under the terms of the group long-term disability insurance plan.

136. Plaintiff is entitled to benefits under the group long-term disability plan.

137. Plaintiff is entitled to back benefits and reinstitution of benefits.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of $150,000.00 together with interest, reasonable attorney's fees and costs, and any other relief this Court deems just.

## COUNT THREE
## Plaintiff vs. Defendant, Temple University Health System, Inc.

138. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1 - 137 aforesaid by reference as though fully set forth at length.

139. As fiduciary of the Plan, Temple is obligated to provide Plaintiff with notice of all material changes to plan provisions and her rights and obligations thereunder.

140. As set forth above, Defendant failed to satisfy its fiduciary duties under Title 29, in particular failing to inform Plaintiff as to changes in the definition of disability and failing to provide Plaintiff with Plan documents.

141. Plaintiff is entitled to penalty under Title 29 in the amount of $100.00 for every day that Defendant failed to provide information after it was requested by Plaintiff.

142. In addition, Plaintiff is entitled to injunctive relief precluding the Plan from relying on the provisions about which Plaintiff was not informed, in particular with respect to the any occupation definition, elimination of any consideration of income amount.

143. As a result of Defendant's conduct Plaintiff did not receive benefits in a timely fashion to which she was entitled and is entitled to an award of interest.

144. In addition, Plaintiff was forced to hire an attorney and is entitled to an award of attorney's fees.

WHEREFORE, Plaintiff demands judgment in her favor in the form of the aforementioned penalty and injunctive relief together with interest and attorney's fees.

## ALTERNATIVE COUNT FOUR
### Plaintiff vs. Defendants, Reliance Standard Life Insurance Company, Matrix Absence Management, Inc. and Temple University Health System, Inc.

145. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1 - 144 aforesaid by reference as though fully set forth at length.

146. In the alternative to the aforementioned counts for benefits, penalty and injunctive relief, Plaintiff asserts equitable relief under Title 29 in the form of remand to the administrative proceeding and reconsideration of her claim considering all evidence available up to the date of this Court's Order.

147. As set forth above, all Defendants breached fiduciary duties to Plaintiff including the duty to provide Plaintiff with a full and fair hearing.

148. The claims procedure under which Plaintiff's claim was administered did not have the processes and safeguards to insure that her claim was determined in accordance with Plan documents.

149. The claims procedure did not include processes and safeguards to insure that Plaintiff was aware of the number of appeals to which she was entitled or her obligation to submit documentation.

150. Plaintiff also did not receive adequate notification of the claims and appeals decisions insofar as the period of time in which she received notice was in excess of that required by ERISA.

151. Plaintiff also did not receive adequate notification of the benefit and appeals determination insofar as the content of the notification did not provide specific reasons for the

determination, a description of any additional material or information necessary for her to perfect her claim, or any explanation as to why additional material or information may be necessary.

152. In addition, Defendant misrepresented the contents of Plaintiff's medical records, the status of its investigation and gathering of evidence, and Plaintiff's entitlement to benefits.

153. Plaintiff asserts in the alternative that she has no adequate remedy in law and is entitled to equitable relief under Title 29.

WHEREFORE, Plaintiff requests in the alternative that this Court remand this matter for administrative reconsideration of her claim to include all evidence available up to the date of this Court's Order.

NEFF AND ASSOCIATES

Date: 1/14/16

_____
BRUCE L. NEFF, ESQUIRE
Identification No.: 02415
Two Penn Center Plaza, Suite 1212
15th Street & JFK Boulevard
Philadelphia, PA  19102
(215) 564-3331
(215) 564-6952 (fax)
bneff@neffandassociates.com
Validation of Signature Code: BLN3365
Attorney for Plaintiff, Kimberly Lash