**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Kimberly Lash | : | CIVIL ACTION |
| 3214 Kilburn Road | | |
| Philadelphia, PA  19114 | : | |
| vs. | | |
| Reliance Standard Life Insurance Company | : | |
| 2001 Market Street, Suite 1500 | | |
| Philadelphia, PA  19103 | : | |
| and | | |
| Matrix Absence Management, Inc. | : | |
| c/o CT Corporation System | | |
| 116 Pine Street, Suite 320 | : | |
| Harrisburg, PA  17101 | | |
| and | : | No. 16-235 |
| Temple University Health System, Inc. | | |
| 3509 N. Broad Street, 9th Floor | : | |
| Philadelphia, PA  19140 | | |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

1.    Plaintiff, Kimberly Lash is an adult individual residing at 3214 Kilburn Road, Philadelphia, PA 19114.

2.    Defendant, Reliance Standard Life Insurance Company ("Reliance") is a corporation organized under the laws of Illinois, which at all material times issued disability insurance policies in Pennsylvania.  Its headquarters is at 2001 Market Street, Suite 1500, Philadelphia, PA 19103.

3.    Defendant, Reliance Standard Life Insurance Company, was the insurer of benefits and designated claims administrator of the Group Long-Term Disability Insurance Plan for Temple University Health System, Inc., (the "Plan").

4.    Defendant, Matrix Absence Management, Inc. ("Matrix"), is a corporation regularly conducting business in the Commonwealth of Pennsylvania, County of Philadelphia with a registered service address of CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, PA

17101.

5.  Defendant, Matrix performed claims administration duties in connection with the Plan during relevant times hereto.

6.  Matrix acted as claims administrator pursuant to an administrative services agreement with Reliance.

7.  Matrix' authority under the agreement was to grant and deny claims, authorize disbursement of benefits, and investigate and maintain claims files in accordance with industry standards.

8.  Matrix was not under any obligation under the terms of the agreement to follow instructions or guidelines established by the appointed claim fiduciary.

9.  Matrix exercised control over the administration of benefits.

10.  Under the terms of the aforementioned agreement, Matrix exercised fiduciary control respecting the management of a plan as defined by ERISA.

11.  Defendant, Temple University Health System, Inc., is a corporation licensed to do business in the Commonwealth of Pennsylvania, City of Philadelphia, with a registered address of 3509 N. Broad Street, 9th Floor, Philadelphia, PA  19140.

### STATEMENT OF JURISDICTION

12.  Plaintiff's claims arise from a dispute involving the Long-Term Disability Plan provided by Plaintiff's employer and benefits claimed under that Plan.

13.  The Reliance Standard Life Insurance Company issued a policy of insurance to fund the Long-Term Disability benefits provided under Temple University Health Systems, Inc.'s Long-Term Disability Plan.

14.  At all material times Plaintiff was employed by Temple University Health System, Inc.

and eligible to claim Long-Term Disability benefits insured by Defendant.

15.   In addition to Plaintiff's claim for benefits under the policy issued by Reliance Standard, Plaintiff seeks a penalty pursuant to 29 U.S.C. §1132(a) for Defendant's refusal to supply requested information that it was required to furnish under Title 29.

16.   This Court has subject matter jurisdiction pursuant to the Employee Retirement Income Security Act "ERISA", 29 U.S.C. §1132(a)(1)(B), §1132(a)(3), §1132(c), §1022 and pursuant to 28 U.S.C. §1367 and §2201.

17.   This Court has personal jurisdiction over Defendants by virtue of their citizenship and/or registration to conduct business in Pennsylvania and their regular and continuous activities within the Commonwealth of Pennsylvania.

## STATEMENT OF FACTS OF THE CASE

18.   At all material times Plaintiff was insured for long-term disability benefits under Policy Number:  LTD 669885 issued by Defendant, Reliance Standard Life Insurance Company.  See Policy, attached hereto as Exhibit "1" and Summary Plan Description, attached as Exhibit "2".

19.   Under the terms of the policy, the monthly benefit is an amount equal to 60% of Covered Monthly Earnings, payable in accordance with the section entitled Benefit Amount.

20.   Under the Insuring Clause provision of Reliance Standard's policy, the following is required:

> We will pay a Monthly Benefit, if an Insured:
> (1)  is Totally Disabled as  the result of a Sickness or Injury
>      covered by this Policy;
> (2)  is under the regular care of a Physician;
> (3)  has completed the Elimination Period; and
> (4)  Submits Satisfactory proof of Total Disability to us.

21.   Under the terms of the policy "Totally Disabled" and "Total Disability" mean, that as a result of an injury or Sickness:

      (1)  during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an insured cannot perform the material duties of his/her Regular Occupation;

      (2)  after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of Any Occupation. We consider the Insured Totally Disabled if due to an injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

22.   Under the terms of the policy "Any Occupation" means an occupation normally performed in the national economy for which an insured is reasonably suited based upon his/her education, training or experience.

23.   Under the terms of the policy, Written Proof Of Total Disability is required, as follows:

      For any Total Disability covered by this Policy, written proof must be sent to us within ninety (90) days after the Total disability occurs.  If written proof is not given in that time, the claim will not be invalidated nor reduced if it is shown that written proof was given as soon as was reasonably possible.  In any event, proof must be given within one (1) year after the Total Disability occurs, unless the Claimant is legally incapable of doing so.

24.   Under the terms of the Plan, Reliance Standard Life Insurance Company was appointed as the claims review fiduciary with respect to the insurance policy and the Plan

25.   Reliance did not exercise its authority to determine claims and interpret policy provisions; instead, Reliance retained Matrix to act as a Plan Administrator.

26.   As a fiduciary, Reliance has an obligation to provide relevant information in accordance with 29 U.S.C. §1132(c) and 29 CFR 2560.503-1.

27.   As set forth below, Reliance failed to provide relevant information.

28.   Under the terms of the Medical Examination and Autopsy provision of Reliance Standard's policy, Reliance has the right to have a Claimant interviewed and/or examined.  This right may be used as often as it is reasonably required **while a claim is pending**.

29.  As set forth below, Plaintiff was not requested to undergo an exam until after her claim was denied.

30.  Under the Benefit Amount provision of Reliance Standard's policy, the following is required:

>    To figure the benefit amount payable;
>    (1)  multiply an insured's Covered Monthly Earnings by the percentage(s), as shown on the Schedule of Benefits page;
>    (2)  take the lesser of the amount;
>        (a)  of step (1) above; or
>        (b)  the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and
>    (3)  subtract Other Income Benefits, as shown below, from step above.
>
>                    •              •              •
>
>    (7)  disability or Retirement Benefits under the United States Security Act.

31.  The Reliance Standard Policy contains a provision entitling the Defendant to offset benefits for Social Security Disability Benefits received by Plaintiff.

32.  The Summary Plan Description developed by Reliance and purportedly provided to beneficiaries did not contain an offset provision for SSD referenced in the preceding paragraph, and was not otherwise sufficiently accurate and comprehensive to apprise Plaintiff of her rights and obligations under the Plan.  See Exhibit "2".

33.  Plaintiff had a history of back pain requiring treatment in January 2012.  At that time, an MRI showed a herniated disc at L4-5 with protrusion and additional degenerative conditions.

34.  Plaintiff fell while still in treatment for the L4-5 herniated disc increasing her pain and leading to another MRI in May 2012.

35.  The second MRI revealed that Plaintiff had a lower thoracic spine intramedullary tumor. The tumor, located within the spinal cord, was surgically resected on May 24, 2012, in a

procedure that required open exploratory surgery of her back and spinal cord, and laminectomies at multiple levels.

36. Plaintiff initially had some sensation in her legs and back post surgery; however, she subsequently went completely numb and totally paralyzed in her lower extremities.

37. After an extended hospital stay Plaintiff was admitted to Magee Rehab on May 21, 2012, where she participated in daily therapy and received various medications for paraplegia, pain, and urinary/bowel incontinence.

38. Plaintiff received steroids for her paraplegia; Nortriptyline, Lyrica, Neurontin and Cymbalta for her neuropathic pain; and for her somatic pain, Plaintiff received Dilaudid, Oxycontin, Tramadol and Motrin.

39. Upon discharge from her inpatient care at Magee, Plaintiff required a wheel chair, rolling walker, and shower chair. Among other medications Plaintiff continued to take Tramadol for somatic pain.

40. At the time of disability, Plaintiff worked as a payroll supervisor for Temple University Health System, Inc.

41. Plaintiff's job required work at a sedentary level.

42. At no time post-surgery did any Defendant determine that Plaintiff could perform the material duties of her occupation.

43. By letter dated December 11, 2012, Plaintiff was informed by Matrix that her claim for long-term disability benefits had been approved. See letter dated December 11, 2012, attached hereto as Exhibit "3".

44. Ms. Lash was informed at that time that in order to be eligible for benefits beyond 24 months she had to be disabled from performing the material duties of any occupation beginning

August 3, 2014.

45.  Plaintiff was instructed that "an investigation will begin prior to this date [August 3, 2014] in order to gather the necessary information to determine your continued eligibility for LTD Benefits.  For a more detailed description of this or any other policy provisions, please refer to our LTD certification of group insurance".  Defendant, Matrix did not provide the insurance certificate at this time.

46.  By letter dated March 22, 2013, the advocate to which Defendant, Matrix referred Plaintiff for purposes of applying for Social Security Disability informed Matrix's claims examiner that it had filed a request for a hearing because the initial SSD claim was denied.

47.  Defendant, Matrix was informed that the advocate would keep Defendant updated regarding the status of Plaintiff's Social Security claim and was provided with the advocate's contact information.

48.  On or about March 23, 2013, Matrix Informed Plaintiff that it had contacted Dr. Abbott, Magee Rehabilitation Hospital, and Plaintiff's orthopedic surgeon and family doctor in order to obtain medical records from September 17, 2012 to March 22, 2013.

49.  Plaintiff was informed by the aforementioned correspondence that the information was requested in order "to determination (sic) if you continue to meet the provisions of your long-term disability (LTD) policy.

50.  Plaintiff was informed by letter dated May 1, 2013, that Matrix had again requested updated medical records of the 4 providers contacted in March 2013, as part of its review of Plaintiff's ongoing disability benefits.

51.  By letter dated May 2, 2013, Plaintiff was informed that Matrix had requested medical records from five additional providers, Dr. Jallo, Dr. Glass, AquaHab, Dr. Wang, and Brian

Bayzick, D.C.

52.  By letter dated September 12, 2013, Plaintiff was informed that Matrix had requested updated medical records from the aforementioned nine providers.

53.  By letters dated October 2013, November 2013, February 2014, and March 2014, Plaintiff was informed by Matrix that it was updating her records.

54.  At no time up to April 2014, did Defendant, Matrix inform Plaintiff that it was unable to obtain records from her providers.

55.  On April 10, 2014, Matrix's Nurse Case Manager, Heidi Sanders performed a review of Plaintiff's claim.

56.  Nurse Sanders noted that the information received included the records of Plaintiff's surgeon, chiropractor, neurology and neurosurgery, dermatology and family practice physicians. The records spanned through her March 10, 2014, office visit with Plaintiff's chiropractor.

57.  At the time of Nurse Sanders' review, Plaintiff was suffering from low back pain, hip pain and bilateral leg paresthesias related to her tumor, and spinal surgery as well as multiple degenerative changes with multiple disc herniations.

58.  Nurse Sanders noted that a 2013 thoracic MRI concluded that there was a bone marrow edema and cystic mass in Plaintiff's thoracic spine.  The MRI documented a new mass which Defendant never accounted for in any of its claims investigations or analysis.

59.  Nurse Sanders noted that Plaintiff had regained some bladder sensation but needed to void on a regular scheduled basis to prevent urinary incontinence.

60.  Nurse Sanders further noted that Plaintiff reported to her spine surgeon, Dr. Abbott, that she was experiencing constant pain and neuropathy in her lower extremities, dizziness and memory issues as of April 2014.

61.  Nurse Sanders' assessment was that the medical records did not reflect a significant change in Plaintiff's condition since the previous Nurse Case Management Review finding Plaintiff disabled from her sedentary occupation and that it was unlikely that Plaintiff would be able to return to work of any type.

62.  Nurse Sanders suggested an updated medical record review in early August of 2014.

63.  By letter dated May 9, 2014, Plaintiff was reminded by Matrix that the any occupation period of long-term disability benefits was approaching as of August 3, 2014.

64.  Plaintiff was requested by the May 2014 correspondence to complete an Activities of Daily Living Questionnaire and Authorizations so that the adjuster could obtain medical information to investigate Plaintiff's disability.

65.  On or around June 6, 2014, Defendant requested that Dr. Abbott provide medical records and complete a Physicians Questionnaire.  The same request was made of Magee Rehabilitation Hospital at that time.  None of the other providers were contacted.

66.  A medical review was performed in or around August 2014 by Nurse Catherine Ricci.

67.  Nurse Ricci apparently copied the medical records review by Nurse Sanders in April 2014 and added a description of subsequent treatment records.

68.  Ricci's August review included updated records to June 2, 2014.   Dr. Abbott had completed an ADL form at that time noting sleep impairment, use of shower chair, unbearable pain of back, legs, and problems with balance.

69.  Nurse Ricci noted that it was unclear at that point whether Plaintiff had consistent work function even at a potential maximum of sedentary level in a position that included the ability to stand and stretch.

70.  By notice dated August 24, 2014, Plaintiff was informed that the Social Security

Disability Administration had determined that she was totally disabled as of January 17, 2012, and awarded benefits retroactive to August 2012.

71. By letter dated October 21, 2014, Lash was informed that Defendant was recalculating her benefits to take into account her entitlement to Social Security Benefits. In addition, Defendant stated it had overpaid Plaintiff's claim from August 3, 2012 through September 3, 2014, in the amount of $37,801.40 and demanded payment in that amount.

72. Defendant stated that "the group policy requires that we withhold any future benefits payable to you until we receive the overpayment balance." Defendant further informed that Plaintiff's benefits would resume upon her payment of $37,801.40.

73. Defendant did not request that Plaintiff complete a consent form for release of information from the Social Security Department until November 19, 2014. Plaintiff promptly completed and returned the authorization.

74. Nurse Ricci documented another review on November 13, 2014.

75. In addition to the information documented in her prior review, Nurse Ricci noted that Dr. Abbott found at the end of therapy in August 2014, that Plaintiff had dysesthesia and lower extremity weakness that would probably persist and that "she is going to have to accommodate."

76. Nurse Ricci ignored or misrepresented Dr. Abbott's comments in the August 26, 2014, office note. Dr. Abbott noted, regarding the course of therapy in which she had engaged through the Summer, that "Unfortunately, while this had improved her strength it has not had an impact on her endurance with regards to being able to sit for extended periods of time. The dysesthesia continues to be quite intrusive and precludes her ability to focus." He further stated his opinion that the dysesthesia "is not something that she will be able to rehabilitate and overcome."

77. Nurse Ricci also erroneously documented an alleged finding by Plaintiff's physical

medicine specialist, Dr. Kupfer, that Plaintiff had physical capacity according to Ricci's note at

level of "sedentary exertion with upper extremity, bilateral push pull; noting chronic pain and

weakness of lower limbs."

78.  In fact, Dr. Kupfer's findings were that Plaintiff had the lowest work exertion level

which he could mark on the form provided by Matrix.  The form requested that he indicate how

much sitting Plaintiff could perform "on a regular basis in an 8-hour work day" to which Kupfer

indicated between 67% and 100%.  Dr. Kupfer did not indicate that Plaintiff had full-time

sedentary work capacity.

79.  Kupfer did not indicate that Plaintiff could continuously sit 100% of an 8-hour work day.

80.  In addition, and in direct contradiction to the comment in Ricci's note, Kupfer marked

"not at all" for pushing and pulling.

81.  Defendant, Matrix requested medical records and a Questionnaire from AquaHab by

letter dated November 22, 2014.

82.  By letter dated November 24, 2014, Defendant, Matrix's long-term disability claims

representative, Garry Smith, forwarded a letter duplicating the letter forwarded by its claims

representative, Trent Small on October 21, 2014, claiming that benefits had been overpaid.

83.  Defendant, Matrix first requested that the Social Security Administration provide its

records concerning Plaintiff's disability by letter dated December 1, 2014.  Defendant's request

for information was sent to the Social Security Administration Office of Central Operations in

Baltimore, Maryland.

84.  The instructions provided by the Social Security Administration, Form SSA-3288,

Request For Information, clearly state that the completed consent for release of information form

is to be sent to the recipient's local Social Security Administration Office.  Defendant received

no information in response to this request.

85. At or about this same time in December 2014, Plaintiff received payment for back benefits from SSA and refunded to Reliance the overpaid benefits in an amount exceeding $37,000.

86. Contrary to Defendant, Matrix's prior representation it did not resume payment to Plaintiff of her benefits upon Plaintiffs reimbursement of the overpayment. Plaintiff received a payment covering the period from September 3, 2014 through March 3, 2015 in March 2015.

87. By letter dated December 19, 2014, Defendant, Matrix's claims representative again requested information from the Social Security Administration concerning Plaintiff's claim sending it to the office of Central Operations in Baltimore. Defendant informed Plaintiff at the time of this request that it was requesting information from the Social Security Office. Defendant received no response nor information to this request.

88. By letter dated January 14, 2015, Defendant, Matrix's claims representative again requested information from the Social Security Administration concerning Plaintiff's claim sending it to the office of Central Operations in Baltimore. Again, Defendant informed Plaintiff that it was requesting information from the Social Security Office. Defendant received no information in response to this request.

89. By letter dated February 6, 2015, Defendant, Matrix informed Plaintiff that it was denying her claim for long-term disability. See letter dated February 6, 2015, attached as Exhibit "4".

90. Defendant, Matrix's claim notes reference three items of medical evidence created around the time that the any occupation provision came into effect. First, Defendant cited an office note of June 6, 2014, wherein the author stated support of Plaintiff's desire to return to

work and documented advice for Plaintiff to continue physical training. The second medical
citation is to the August 10, 2014, physical capacities questionnaire completed by Magee
Rehabilitation Hospital about which Defendant erroneously claims "the information that the
medical professional completed supports sedentary work capability." And finally, Defendant
cites Dr. Abbott's similarly mischaracterized note from Plaintiff's August 26, 2014, office visit.

91. Regarding the August visit with Dr. Abbott, Defendant, Matrix misrepresents that
Plaintiff was "now no longer attending" physical therapy. The note does not suggest or
otherwise account for the fact that Plaintiff had completed the prescribed course of physical
therapy with little to no improvement. Instead, Defendant misrepresents in its denial letter that
physical therapy "did not appear to have an effect on your ability to sit."

92. Defendant, Matrix notes that a repeat MRI scan was performed and "does not show such
a distortion of the cord nor do the symptoms fit the type of pattern."

93. Defendant, Matrix did not document any analysis regarding the significance of any of
the three items of medical records that it summarized in its notes.

94. Defendant, Matrix did not indicate in its denial the way in which the cited medical
evidence supported its decision.

95. Defendant, Matrix did not provide any hint as to the information that Plaintiff could
provide to assist Defendant in resolving its concerns relevant to the medical evidence.

96. Defendant, Matrix concluded its denial stating that Plaintiff had the transferable skills
and physical capacity to work at occupations "performed at a sedentary level of exertion:
information clerk; rehabilitation clerk; cashier 1; customer-complaint clerk; and accounting
clerk."

97. All of the occupations identified by Defendant, Matrix's residual employability analysis

required up to 1 year of vocational preparation.  The policy definition of disability does not contemplate the need for retraining.

98.  All of the occupations identified by Defendant's residual employability analysis required lifting, carrying, pushing and pulling 10 pounds occasional.

99.  There is no evidence that Plaintiff has or had that lifting, carrying, pushing or pulling capacity.

100. None of the occupations identified in Defendant's residual employability analysis allowed for unrestricted ability to stand and move around for purposes of stretching as needed.

101. All of the occupations identified in Defendant's residual employability analysis present work situations wherein the ability to obtain precise set limits, tolerances and standards is required or there is a requirement of being able to have certain cognitive aptitude including learning, verbal, and numerical aptitudes that were called into question by Plaintiff's treating physicians but Defendant never considered or investigated those cognitive limitations.  The disability Plan required an analysis of whether the alternative occupations were economically gainful relative to Plaintiff's own occupation, Defendant made no such analysis.

102. Defendant, Matrix informed Plaintiff that it was not obligated to follow the decision of Social Security Administration.  However, Defendant did not inform that it had never obtained any information from the Social Security Administration.

103. On February 22, 2015, Plaintiff informed Defendant that she was Appealing its decision. Plaintiff requested copies of all documents relative to her claim.

104. By letter dated March 10, 2015, Defendant confirmed receipt of Plaintiff's request for review of the claim denial and informing that "to the extent that additional information is needed, Reliance Standard Life will toll the relevant time frames for reaching an Appeal determination

from the time of our request for additional information until such time as we receive the requested information." Defendant also requested that Plaintiff complete an authorization for Defendant's "quality review unit to obtain updated medical information if it is needed during the review of your Appeal."

105. Despite knowing that Plaintiff was suffering from cognitive limitations, Defendant did not explicitly describe Plaintiff's rights and responsibilities in the appeals process.

106. By letter dated March 13, 2015, Defendant informed that it had "received and reviewed the medical records with a staff medical specialist. In this regard, we had determined that we will require that you undergo an Independent Medical Examination (IME), prior to the conclusion of our review."

107. As of March 13, 2015, Defendant had not obtained any information, documents or records in addition to that which it had in its possession as of the date that it made the decision to deny Plaintiff's any occupation disability claim, February 6, 2015.

108. There was no new evidence or review leading to the IME request.

109. The IME was intended to provide a basis for the previous denial of benefits which was not supported by the records in Reliance's possession.

110. Defendant requested the IME in response to Plaintiff's appeal.

111. Defendant claimed that upon its receipt and review of the IME report it "will update you or inform should we determine that additional information would be required as part of this review."

112. Defendant never followed up regarding additional information after the IME.

113. On or about March 13, 2015, Defendant scheduled Plaintiff for an exam with Dr. Daniel Rosenberg for March 31, 2015.

114. The March 13, 2015 letter, like the March 10, 2015 letter, did not present information in a manner calculated to assist a person such as Plaintiff suffering from cognitive limitations.

115. Finally, the March 13, 2015, letter claimed that its request for an IME would toll the statutory time frames for reaching an appeal decision, from the time of its request until its receipt of the physician's report.

116. There are no ERISA rules, regulations or guidelines that provide for tolling of deadlines for completion of an Appeal review upon request of an IME.

117. By letter dated May 22, 2015, Defendant informed that it was upholding its claims decision.  See letter dated May 22, 2015, attached hereto as Exhibit "5".

118. In its second denial letter, Defendant's representative summarized some of Plaintiff's medical history and restated its position that the medical evidence no longer supported Plaintiff's disability.

119. Defendant reiterated its aforementioned misrepresentations of Dr. Abbott's and Dr. Kupfer's records and physical capabilities questionnaire responses.

120. Defendant continued its second denial "you appealed and in response to your appeal, RSL then arranged for you to undergo an Independent Medical Examination".

121. The medical examiner, Dr. Rosenberg, stated that Plaintiff had the ability, in an 8 hour work day, to sit between 34% to 66% of the time.  Dr. Rosenberg concluded that if Plaintiff was able to stand and stretch "as needed", she had sedentary work capacity.

122. At no time did Dr. Rosenberg quantify the extent to which Plaintiff needed to stand, stretch, or move about, or indicate with any degree of certainty Plaintiff's ability to sit beyond his reference to a 34% to 66% range.

123. On March 2, 2015, a representative of Plaintiff's employer contacted Defendant to

inquire into why Defendant had denied Plaintiff's claim for any occupation total disability. Defendant related that "we were able to find alt[ernative] sedentary occs based off the claimant's skills, education, and employment history." The employer's representative, Richard West stated the Plan required that any alternative employment provide earnings of at least 60% of the prior earning capacity. The Defendant's representative instructed that earnings amount provision was part of an earlier policy but not the Reliance Policy and suggested that Mr. West call the insurance agent.

124. Plaintiff was never informed of the purported change in the Plan eliminating the earnings amount provision.

125. Defendant's representative further informed that "in good faith" it would extend Plaintiff's benefits to the current date because of the delay in processing the claim which was blamed on Social Security Administrations taking so long to process Defendant's request for its file. Contrary to its representation to West, Defendant processed the claim without ever having received the SSA file.

126. The same "communication" log was used by the first level claims team, and Defendant's "Appeal specialist" Melissa C. Andre, Esquire, who upheld the Appeal on May 22, 2015. All information and analysis associated with the first claim denial was utilized by the "Appeals Specialist".

127. On September 22, 2015, Plaintiff's counsel forwarded a letter to Ms. Andre, enclosing a letter from The Children's Hospital and two MRI reports showing re-growth of the spinal tumor which had previously been surgically removed. See letter dated September 22, 2015, attached hereto as Exhibit "6".

128. On October 22, 2015, Plaintiff's counsel forwarded a letter to Ms. McGill, enclosing a

copy the Functional Capacity Evaluation which was performed on Plaintiff on June 25, 2015. The report demonstrated that Ms. Lash did not have the physical capacity to perform a fulltime job. See letter dated October 22, 2015, attached hereto as Exhibit "7".

129. Defendant refused to consider the evidence submitted by Plaintiff's counsel, relying on procedure grounds concerning the timing of the submission.

130. Defendant refused to consider the aforementioned, purportedly late evidence, despite the fact that its decision was itself untimely and based in part on evidence that was not developed in accordance with Plan and ERISA procedures.  Furthermore, Defendant knew that Plaintiff was undergoing evaluations to support her claim but Defendant decided it was upholding its decision to terminate benefits to avoid having to consider that evidence.  As a result, the decision to exclude the information supplied by Plaintiff's attorney was arbitrary and capricious and not intended to address Plaintiff's disability.


**COUNT ONE**
**Claim for Benefits**
**Plaintiff vs. Defendants, Reliance Standard Life**
**Insurance Company and Matrix Absence Management, Inc.**

131. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1- 130 aforesaid by reference as though fully set forth at length.

132. Defendant Reliance failed to exercise the discretion granted to it under the terms of the Plan.  Matrix did not have discretion to decide benefits or interpret policy terms; accordingly, this Court has *de novo* review.

133. Plaintiff is disabled under the terms of the group long-term disability insurance plan.

134. Plaintiff is entitled to benefits under the group long-term disability plan.

135. Plaintiff is entitled to back benefits and reinstitution of benefits.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of $150,000.00 together with interest, reasonable attorney's fees and costs, and any other relief this Court deems just.

## ALTERNATIVE COUNT TWO
### Plaintiff vs. Defendants, Reliance Standard Life
### Insurance Company and Matrix Absence Management, Inc.

136. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1-135 aforesaid by reference as though fully set forth at length.

137. In the event this Court finds that Matrix and/or Reliance was entitled to or did exercise discretion under the terms of the Plan in denying Plaintiff's benefit claim that decision was an abuse of discretion by virtue of Defendant:

    a.   Failing to interpret the meaning of "part-time basis";

    b.   Failing to consider any earnings component of whether Plaintiff was reasonably suited upon her education, training or experience for the alternative occupations;

    c.   Failing to exercise its discretionary authority to decide claims and interpret policy provisions;

    d.   Failing to provide relevant information under the policy;

    e.   Requesting that Plaintiff undergo a physical examination after her claim was already denied with no new information or analysis;

    f.   Utilizing the medical examination when such procedure was not described or provided for in the Summary Plan Description;

    g.   Failing to consider the new tumor growth evidenced in the 2013 MRI;

    h.   Failing to consider that Plaintiff suffered from somatic pain;

    i.   Relying on the medical examiner when he failed to consider that Plaintiff was suffering from somatic pain;

    j.   Failing to consider the affects of the pain and medication that Plaintiff was

utilizing for that pain;

k.  Failing to inform Plaintiff to the extent that it was having difficulty obtaining documents from her providers;

l.  Failing to consider Plaintiff's cognitive deficits;

m.  Failing to consider Plaintiff's need for a regulated schedule in order to prevent incontinence;

n.  Failing to contact all of Plaintiff's medical providers for records and a physicians questionnaire updating documents;

o.  Failing to obtain consent for release of information from the Social Security department upon learning Plaintiff obtained Social Security Disability benefits;

p.  Failing to obtain records from Social Security Department in a prompt fashion upon obtaining consent for release of information;

q.  Failing to take into consideration the determination of the Social Security Department that Plaintiff totally disabled;

r.  Making its decision without having obtained records of the Social Security Administration;

s.  Making its decision without Social Security Administration records while informing Plaintiff that it was obtaining the Social Security records;

t.  Misrepresenting to Plaintiff the contents of her medical records;

u.  Interpretating the contents of Plaintiff's medical records in a biased manner by disregarding information that benefited Plaintiff's claim giving undue weight to information that supported a denial of disability;

v.  Finding that Plaintiff could perform activities on a regular basis in a 8 hour work day when no medical provider or examiner was of the opinion that Plaintiff could work an 8 hour workday;

w.  Considering occupations that required training as occupations within Plaintiff's work capacity in its residual employability analysis;

x.  Considering occupations that required physical and mental capacity that Plaintiff did not have as potential occupations in its residual employability analysis;

y.  Failing to perform an independent analysis on review of Plaintiff's request for consideration;

z.  Misrepresenting that ERISA rules, regulations or guidelines provided for tolling deadlines to complete an IME;

aa. Deciding to reinstate benefits on no factual basis then withdrawing benefits;

138. Plaintiff is disabled under the terms of the group long-term disability insurance plan.

139. Plaintiff is entitled to benefits under the group long-term disability plan.

140. Plaintiff is entitled to back benefits and reinstitution of benefits.

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants in an amount in excess of $150,000.00 together with interest, reasonable attorney's fees and costs, and any other relief this Court deems just.

## COUNT THREE
### Plaintiff vs. Defendant, Temple University Health System, Inc.

141. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1 - 140 aforesaid by reference as though fully set forth at length.

142. As fiduciary of the Plan, Temple is obligated to provide Plaintiff with notice of all material changes to plan provisions and her rights and obligations thereunder.

143. As set forth above, Defendant failed to satisfy its fiduciary duties under Title 29, in particular failing to inform Plaintiff as to changes in the definition of disability and failing to provide Plaintiff with Plan documents.

144. Plaintiff is entitled to penalty under Title 29 in the amount of $100.00 for every day that Defendant failed to provide information after it was requested by Plaintiff.

145. In addition, Plaintiff is entitled to injunctive relief precluding the Plan from relying on the provisions about which Plaintiff was not informed, in particular with respect to the any occupation definition, elimination of any consideration of income amount.

146. As a result of Defendant's conduct Plaintiff did not receive benefits in a timely fashion to which she was entitled and is entitled to an award of interest.

147. In addition, Plaintiff was forced to hire an attorney and is entitled to an award of attorney's fees.

WHEREFORE, Plaintiff demands judgment in her favor in the form of the aforementioned penalty and injunctive relief together with interest and attorney's fees.

### ALTERNATIVE COUNT FOUR
### Plaintiff vs. Defendants, Reliance Standard Life
### Insurance Company, Matrix Absence Management,
### Inc. and Temple University Health System, Inc.

148. Plaintiff, Kimberly Lash, hereby incorporates paragraphs 1 - 147 aforesaid by reference as though fully set forth at length.

149. In the alternative to the aforementioned counts for benefits, penalty and injunctive relief, Plaintiff asserts equitable relief under Title 29 in the form of remand to the administrative proceeding and reconsideration of her claim considering all evidence available up to the date of this Court's Order.

150. As set forth above, all Defendants breached fiduciary duties to Plaintiff including the duty to provide Plaintiff with a full and fair hearing.

151. The claims procedure under which Plaintiff's claim was administered did not have the processes and safeguards to insure that her claim was determined in accordance with Plan documents.

152. The claims procedure did not include processes and safeguards to insure that Plaintiff was aware of the number of appeals to which she was entitled or her obligation to submit documentation.

153. Plaintiff also did not receive adequate notification of the claims and appeals decisions

insofar as the period of time in which she received notice was in excess of that required by ERISA.

154. Plaintiff also did not receive adequate notification of the benefit and appeals determination insofar as the content of the notification did not provide specific reasons for the determination, a description of any additional material or information necessary for her to perfect her claim, or any explanation as to why additional material or information may be necessary.

155. In addition, Defendant misrepresented the contents of Plaintiff's medical records, the status of its investigation and gathering of evidence, and Plaintiff's entitlement to benefits.

156. Plaintiff asserts in the alternative that she has no adequate remedy in law and is entitled to equitable relief under Title 29.

WHEREFORE, Plaintiff requests in the alternative that this Court remand this matter for administrative reconsideration of her claim to include all evidence available up to the date of this Court's Order.


NEFF AND ASSOCIATES


Date: 7/1/16                         BY:    /s/ Bruce L. Neff      BLN3365
                                            BRUCE L. NEFF, ESQUIRE
                                            Identification No.:  02415
                                            Two Penn Center Plaza, Suite 1212
                                            15th Street & JFK Boulevard
                                            Philadelphia, PA  19102
                                            (215) 564-3331
                                            (215) 564-6952 (fax)
                                            bneff@neffandassociates.com
                                            Validation of Signature Code: BLN3365
                                            Attorney for Plaintiff, Kimberly Lash